UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PETER W. ANDERSON, JR.,                                        PLAINTIFF

vs.                                        CIVIL ACTION NO. 3:20-CV-5-CRS

CHARTER COMMUNICATIONS AND                          DEFENDANTS
CHRISTOPHER CORNETT

### MEMORANDUM OPINION

This matter is before the Court on Defendant's motion to dismiss and compel arbitration or, in the alternative, to stay proceedings pending arbitration. DN 5. Plaintiff filed a response. DN 15. Defendant filed a reply wherein it also requested attorney's fees and costs. DN 17. This matter is now ripe for adjudication. For the following reasons, Defendant's motion to dismiss and compel arbitration will be granted, and Defendant's request for attorney's fees and costs will be denied.

### I. Background

Defendant Charter Communications ("Defendant" or "Charter") is a national telecommunications company that provides telephone, internet, and cable services. DN 5-1 at 2. Charter employed Plaintiff Peter Anderson ("Plaintiff" or "Anderson") from sometime in late 2001 or early 2002[1] until December 20, 2018. DN 1 at 3. On December 2, 2019, Anderson filed 14-count complaint against Defendant in Jefferson Circuit Court, Kentucky for events related to his termination. DN 1-2.

In October, 2017, Charter implemented an employee Arbitration Agreement through a program called Solution Channel, which it provided to all active, non-union employees. DN 5-2 at 1. Charter described Solution Channel to its employees as "a program that allows you and the

---

[1] Charter alleges Anderson began working for the company on March 1, 2002, but Plaintiff alleges he began work in July, 2001. DN 1-2 at 2. The exact date is irrelevant for the purposes of the instant motion.

company to efficiently resolve covered employment-related legal disputes through binding arbitration." *Id.* at 6. Charter's Executive Vice President of Human Resources, Paul Marchand, sent the Solution Channel Announcement to employees' company email accounts. *Id.* at 2.  The Solution Channel Announcement stated:

> By participating in Solution Channel, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about Solution Channel is located on Panorama. Unless you opt out of participating in Solution Channel within the next 30 days, you will be enrolled. Instructions for opting out of Solution Channel are also located on Panorama.

DN 5-2 at 6. The Solution Channel Announcement included a blue hyperlink to the Solution Channel web page located on Panorama, Charter's intranet site that is accessible to all employees. *Id.* at 6.

The Solution Channel web page provided information regarding the Solution Channel arbitration program and contained links to the Arbitration Agreement and Program Guidelines. DN 5-2 at 8. Charter's Vice President of HR Technology, John Fries, affies that the Solution Channel web page also provided instructions for opting out of the Solution Channel arbitration program as well as a link to a web page where employees could opt out of the program. *Id.* at 2–3. Fries states that employees who followed the link were presented with the following notice: "I ALSO UNDERSTAND THAT IF I DO NOT OPT OUT, I AM SPECIFICALLY CONSENTING TO PARTICIPATION IN SOLUTION CHANNEL." *Id.* at 3; DN 5-2 at 38 (emphasis in original). Charter enrolled employees who did not opt out of Solution Channel on or before November 5, 2017. *Id.* Charter states (and Plaintiff does not contend otherwise) that Anderson did not opt out of the Solution Channel arbitration program. *Id.* at 4.

## II. Legal standard

2

Charter moves the Court to compel arbitration under Section 4 of the Federal Arbitration Act ("FAA"), which provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration...[and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23–24 (1983). Although federal law governs the arbitrability of disputes, state law principles resolve issues related to the formation of contracts. *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005).

"[D]istrict courts in Kentucky evaluate a motion to compel arbitration as one for summary judgment under Fed. R. Civ. P. 56(c)." *Wilson v. CPB Foods, LLC*, No. 3:18-CV-014-CHB, 2018 WL 6528463, at *2 (W.D. Ky. Dec. 12, 2018) (citations omitted).  In order to defeat a motion to compel arbitration, the plaintiff bears the burden of "show[ing] a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). This "showing mirrors that required to withstand summary judgment in a civil suit." *Id*.

Before compelling an unwilling party to arbitrate, courts must ordinarily "engage in a limited review to determine whether…a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc*. 315 F.3d 619, 624 (6th Cir. 2003). However, "[w]here the parties have clearly

and unmistakably agreed to arbitrate arbitrability, a court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause." *Stumbo, Inc. v. Data*, No. 1:19-CV-00168-GNS, 2020 U.S. Dist. LEXIS 56369, at *11 (W.D. Ky. Mar. 31, 2020) (citing *Rent-A-Ctr.*, 561 U.S. at 68).

### III. Discussion

Defendant urges this court to dismiss Anderson's suit and compel arbitration because a valid arbitration agreement exists between the parties and all matters in dispute are within the scope of that agreement. DN 5-1 at 5–12. Plaintiff responds that the arbitration agreement is invalid and that, even if the agreement itself were valid, the dispute falls outside the scope of the agreement by the agreement's own terms.  DN 15. Because the parties clearly and unmistakably agreed to arbitrate Plaintiff's claims, the Court finds that Anderson's objections are for the arbiter, not the Court, to decide.  Accordingly, Plaintiff's claims will be dismissed.

Parties to a contract may agree to arbitrate "gateway" questions of arbitrability. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (noting that this "reflects the principle that arbitration is a matter of contract"). A challenge to the "validity of the agreement to arbitrate" (or, in other words, a challenge to an arbitration clause within a underlying employment contract) is generally for a court to resolve, whereas a challenge to "the contract as a whole" is generally for an arbitrator to decide.  *Id.* at 86.  When "the underlying contract is itself an arbitration agreement," challenges to the validity of the contract as a whole are for the arbitrator to decide.  *Id.*

Here, the underlying contract is itself an arbitration agreement, not simply an arbitration clause within a broader employment contract.  Therefore, if the parties consented to the Agreement, any challenge to its validity are for the arbitrator to decide.  Plaintiff does not dispute

that he failed to opt out of the Solution Channel arbitration program, nor that such failure constituted consent.   Accordingly, the Court finds that Anderson is bound by the Arbitration Agreement's terms.

Under the Arbitration Agreement, Plaintiff and Charter: "mutually agree[d] that, as a condition of…[Plaintiff's] employment with Charter, any dispute arising out of or relating to [Plaintiff's]…employment with Charter or the termination of that relationship,…[would] be resolved through binding arbitration." DN 5-2 at 9. The Agreement also states the parties agreed arbitration hearings would be "conducted pursuant to the Solution Channel Program Guidelines and the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable." DN 15-1 at 5. By Plaintiff's own admission, "the Arbitration Agreement delegates the determination of interpretation, applicability, enforceability, or formation of the arbitration agreement to the arbitrator." DN 15 at 2.

Plaintiff now argues the entire arbitration agreement is invalid on three grounds: (1) "it is unconscionable because the Arbitration Agreement delegates the determination of interpretation, applicability, enforceability, or formation of the arbitration agreement to the arbitrator," (2) there was no new consideration for the Arbitration Agreement,[2] and (3) "it is unconscionable because the Arbitration Agreement places such limitations upon discovery that Plaintiff's rights to due process, equal protection and to a jury trial are violated."  DN 15 at 2. Because Plaintiff consented to delegate questions of arbitrability to the arbiter and Plaintiff now challenges the validity of the entire agreement, Plaintiff's objections are for the arbiter, not this Court, to decide.  *Rent-A-Center*,

---

[2] To the extent that Plaintiff alleges a lack of consideration means the parties never executed a valid contract, his arguments are without merit.  The parties' mutual agreement to arbitrate disputes arising out of Anderson's employment relationship constitutes adequate consideration. *See Energy Homes, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013)("an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration.")(quoting *Kruse v. AFLAC Intern., Inc.*, 458 F. Supp. 2d 375, 385 (E.D. Ky. 2006)).

561 U.S. at 72 ("leaving any challenge to the validity of the Agreement as a whole for the arbitrator").

Plaintiff also argues his claims are excluded by the Arbitration Agreement's own terms:

Section C (9) of the agreement that excludes claims older than the statute of limitations applicable to such claims. The statute of limitations in Kentucky for this type of claim is one-year. Therefore, pursuant to the Charter Arbitration Agreement, arbitration is not applicable to this case.

DN 15 at 3. Plaintiff's argument is without merit. Should the arbitrator determine that the Agreement is valid, the Agreement delegates to the arbitrator "the determination of interpretation, applicability, [and] enforceability" of its terms. DN 15 at 2. Therefore, the parties have delegated to the arbitrator the authority to determine whether Plaintiff's claims fall within the scope of the Arbitration Agreement. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 765 (1983) (finding that "the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.").

Having determined that Plaintiff's objections are not properly before this Court, the Court must now determine whether the instant action should be dismissed entirely or stayed pending arbitration. Plaintiff argues that the "Federal Arbitration Act requires the lawsuit to be stayed pending arbitration." DN 15 at 2. To support his position, Plaintiff points to cases from the First, Eighth, Ninth, and Tenth Circuits. DN 15 at 4. Plaintiff's argument is without merit. The Sixth Circuit, by whose precedent this Court is bound, has repeatedly upheld the dismissal of "litigation in which all claims are referred to arbitration." *Hensel v. Cargill, Inc.*, 198 F.3d 245, at *4 (6th Cir. 1999) (table); *see Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (upholding dismissal of case where all claims were referred to arbitration); *Arnold v. Arnold Corp*., 920 F.2d 1269, 1275 (6th Cir. 1990) (same). As this Court will refer all Plaintiff's claims to arbitration, dismissal is appropriate.

Finally, Plaintiff argues "This case should not be dismissed on the ground the Plaintiff's theories of recovery have a one-year statute of limitations and the end result of a dismissal would be a dismissal of the entire case." DN 15 at 1.  While Plaintiff's statement may be true, this provides no basis for the Court to undermine the parties' intent as demonstrated through the Arbitration Agreement.   Anderson and Charter intended to mutually bind themselves to arbitrate disputes arising out of Anderson's employment.   The Arbitration Agreement states that "[i]f an individual or entity files a claim beyond [the statute of limitations], the claim will not be covered by Solution Channel and the claimant will be notified that the claim has been closed." DN 5-2 at 36. Despite such language, Plaintiff chose to file the instant lawsuit instead of bringing his claim through Solution Channel.  Plaintiff cannot now use his intentional breach as a basis for the Court to decline enforcement of the parties' Agreement. To do so would render the binding power of the Arbitration Agreement void because any party seeking to circumvent it could do so by filing a lawsuit shortly before the expiration of the statute of limitations.  Thus, Plaintiff's argument provides no bar to the dismissal of this action.

In its reply, Charter requests attorney's fees and costs associated with the instant action. DN 17 at 11.  Attorney fees are ordinarily only awarded to the prevailing party if authorized by "specific and explicit provisions," *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 260 (1975), or where parties maintain "a meritless claim or defense…in bad faith." *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1230 (6th Cir. 1984). The FAA does not contain any provisions providing attorney fees to prevailing parties. *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994).  Therefore, the award of attorney's fees and costs is only appropriate if Anderson has maintained his claims and defenses in bad faith.

The Court adopts the following analysis by the Western District of Michigan:

> The Court understands Defendant's frustration for being forced to file a Motion to Dismiss or Compel Arbitration given that Plaintiff--on his own free will--entered into the arbitration agreement with Defendant. Plaintiff's refusal to arbitrate his claims teeters on the brink of frivolousness and wastes not only the time of defense counsel, but also valuable judicial resources. Plaintiff has thrown into the hodgepodge almost every argument known to the Court for invalidation of an arbitration agreement. To reasonable attorneys, it should have been obvious most of these arguments presented no tenable issue. Nevertheless, attorney fees are not advisable in this instance. Therefore, Defendant's request for attorney fees and costs will be denied. This holding does not seek to prevent Defendant from recovering attorney fees in arbitration, if such fees are available.

*Moore v. Ferrellgas*, 533 F. Supp. 2d 740, 752–53 (W.D. Mich. 2008). While Plaintiff's counsel should have known that bringing the instant action outside of arbitration would be fruitless, particularly in light of the notice sent from Defendant's counsel stating as much on December 17, 2019, the Court does not find that Plaintiff's actions rise to the level of "bad faith." DN 5-3 at 1. Accordingly, Charter's request for attorney's fees and costs will be denied.

## IV. Conclusion

For the reasons stated above, the Court will grant Defendant's motion to dismiss and compel arbitration. DN 5. A separate order will be entered this date in accordance with this memorandum opinion.

July 13, 2020

Charles R. Simpson III, Senior Judge
United States District Court